UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIA M.,

                Plaintiff,

v.                                                                                              CASE # 21-cv-00972

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>ELIZABETH HAUNGS, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | PADMA GHATAGE, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

### I.     RELEVANT BACKGROUND

#### A.     Factual Background

Plaintiff was born on May 23, 1962 and has at least a high school education. (Tr. 377, 457). Generally, plaintiff's alleged disability at the time of application was posttraumatic stress disorder, anxiety, depression, difficulty being around people, high blood pressure, and high cholesterol. (Tr. 376). Her amended alleged onset date of disability was June 23, 2016, and her date last insured was June 30, 2018. (Tr. 10, 457).

#### B.     Procedural History

On May 23, 2019, plaintiff protectively applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and Supplemental Security Income Benefits (SSI) under Title XVI. (Tr. 299-323). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ). On October 30, 2020, plaintiff appeared telephonically before ALJ David F. Neumann. (Tr. 35-62). On January 29, 2021, ALJ Neumann issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-23). On July 15, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

#### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since June 23, 2016, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: mild stenosis and foraminal narrowing of the lumbar spine and degenerative changes of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant could lift 10 pounds frequently and 20 pounds occasionally; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions; could climb ropes, ladders and scaffolds occasionally; can occasionally climb (ramps/stairs) , balance, stoop, kneel crouch and crawl.

6. The claimant is capable of performing past relevant work as a school adjustment counselor (DOT: 195.107-038- skilled, light, SVP 7). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 10-23).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Argument

Plaintiff makes two arguments in support of her motion for judgment on the pleadings[1]. First plaintiff argues the ALJ failed to account for plaintiff's severe and non-severe impairments in combination. Next plaintiff argues the ALJ failed to properly evaluate the opinion evidence. (Dkt. No. 7 [Pl's Mem. of Law]).

---

[1] Plaintiff raises an additional argument in the footnotes about the vocational expert's testimony and transferable skills. (Dkt. No. 7 at 14). However, Courts in this circuit have made clear that arguments in footnotes are waived. *See, e.g.*, *Marnell v. Comm'r of Soc. Sec.*, No. 17-CV-6201, 2018 WL 3620152, at *10 n.6 (W.D.N.Y. July 30, 2018); *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n.1 (S.D.N.Y. 2014); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 256 n.4 (S.D.N.Y. 2009).

### B. Defendant's Arguments

In response, defendant argues the ALJ properly evaluated the record as a whole, including the medical opinion evidence, and the RFC with no mental limitations was supported by substantial evidence. (Dkt. No. 8 [Dec.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV.    ANALYSIS

    A.  Mental RFC

The ALJ found the plaintiff had the severe impairments of mild stenosis and foraminal narrowing of the lumbar spine and degenerative changes of the cervical spine. (Tr. 12). The ALJ discussed that he also considered plaintiff's other medically determinable impairments, including those not severe, when assessing the RFC. (*Id.*). In particular, the ALJ found plaintiff's mental health impairments did not inhibit plaintiff's ability to function on a daily basis and were therefore not severe as directed by the disability regulations after applying the "paragraph B" criteria. (Tr. 14). The ALJ appropriately explained his reasoning in reaching his conclusions about the four broad areas of mental functioning at Step 2 of the sequential evaluation, finding that plaintiff had a mild limitation in the functional areas of interacting with others and adapting and managing herself, and no limitation in the other two areas. (Tr. 13-16).

Plaintiff does not take issue with the ALJ's finding that her PTSD, panic disorder, and depression were non-severe impairments, but rather argues the ALJ should have imposed limitations for the non-severe mental impairments in the RFC. (Dkt. No. 7 at 9). The Court rejects this basis for remand.

The RFC is an assessment of "the most [plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To be sure, "[a] RFC determination must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012). However, when substantial evidence in the record supports only mild limitations in mental functioning, an ALJ is not required to include mental limitations or restrictions in the RFC. *Lynett W. v. Comm'r of Soc. Sec.*, 19-CV-1168, 2021 WL 868625, at *4 (WDNY Mar. 9, 2021) (finding "mild limitations do not necessarily require the addition of mental

limitations in the RFC"); *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021)(remand denied where the "ALJ properly evaluated the mental impairments at Step Two and reasonably considered such impairments at subsequent steps and accordingly found the mild limitations resulting from the non-severe impairments did not warrant any mental restrictions in the RFC"); *see also Jonathan B. v. Comm'r of Soc. Sec.,* No. 1:20-CV-01374-EAW, 2022 WL 14347453, at *3 (W.D.N.Y. Oct. 25, 2022) (same). Indeed, a finding of only mild limitations at step two would cease the analysis and benefits would be denied. *See Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (the degree of limitation in each of the first three areas is rated "mild" or better, then the ALJ will generally conclude that the claimant's mental impairment is not severe and will deny benefits).

Here, the ALJ's finding was supported by the prior administrative medical findings of Dr. J. May Ph.D., as confirmed by Dr. V. Ng Ph.D., who assessed the same limitations as found at Step 2 by the ALJ, and the medical opinion of consultative examiner Dr. Susan Santarpia, who opined that plaintiff was only mildly impaired in interacting adequately with supervisors, coworkers, and the public, and regulating emotions, controlling behavior and maintaining well-being. (Tr. 121-22, 136-38, 598). The ALJ also observed that treatment notes reflect plaintiff denied significant depression, anxiety or stress. (Tr. 20, *referring to* Tr. 587; see also Tr. 490, 492, 496, 99, 506 520, 556, 673, 713 (denying psychiatric symptoms to primary care provider); 578 (denying significant depression or anxiety to her gynecologist). She often reported she was "doing okay." (Tr. 499, 518, 520, 673).

Although plaintiff cites evidence in the record of subjective complaints regarding her psychiatric limitations, she fails to prove she had additional work related mental functional limitations. It is plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the

7

ALJ, and she has failed to do so. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). It is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. *Dailey v. Comm'r of Soc. Sec.*, 2016 WL 922261, at *6 (N.D.N.Y. Feb. 18, 2016), adopted, 2016 WL 917941 (N.D.N.Y. March 10, 2016).

### B. Opinion Evidence

Plaintiff next argues the ALJ did not properly articulate his analysis in finding the consultative examiner opinions and prior administrative medical findings persuasive or partially persuasive. (Dkt. No. 7 at 14-19). Plaintiff essentially contends the ALJ erred by using circular reasoning to find the opinions of Dr. Santarpia, Dr. Fkiaras, and Dr. Miller persuasive and partially persuasive because the analysis of each opinion began with the language "to the extent that it is consistent with the residual functional capacity." (Dkt. No. 7 at 19 *referring to* Tr. 20). Plaintiff's argument however omits the remainder of the analyses, which reveal the ALJ properly considered the supportability and consistency factors as required by the regulations.

Plaintiff concedes the ALJ discussed other evidence but hyper-focuses on the vocabulary used by the ALJ. (Dkt. No. 7 at 15). In addressing each opinion, the ALJ explained how the persuasiveness was determined, with citations to the record. ALJ Neumann did not apply the incorrect standard for evaluation of medical opinion evidence as plaintiff alleges. (Dkt. No. 9 at 2).

When discussing Dr. Fkiaras's opinion, the ALJ wrote "this opinion is partially persuasive to the extent that it is consistent with the residual functional capacity because to that extent, it is supported by accompanying examination records (See Exhibit B7F)." (Tr. 20, *referring to* Tr. 600-04). The records cited were from Dr. Fkiaras's examination records which the ALJ had discussed in greater detail earlier in the decision. (Tr. 18) *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)

("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

Viewed in the entirety, the ALJ had also discussed the various physical findings from throughout the record which did not support greater limitations but were consistent with the light work range opined by Dr. Fkiaras. Plaintiff routinely denied musculoskeletal symptoms such as chronic pain, reported normal range of motion, and denied neurological symptoms such as numbness and tingling for most of the relevant period. (Tr. 18, *referring to* Tr. 506; see also 490, 492, 496, 499, 501, 518, 520, 556, 673, 713). The ALJ considered reports in July and August 2020, in which plaintiff stated that she had fallen on her back a year or two earlier and was now experiencing progressively worse lumbar spine pain as a result. (Tr. 18, *referring to* Tr. 632, 670). Even so, she had full range of motion of the extremities, full (5/5) strength on the left and almost full (4/5) strength on the right, as well as normal coordination. (Tr. 633).

The ALJ further observed that plaintiff experienced a significant reduction in her symptoms following chiropractic treatment, and she referred to her chiropractor as a "miracle worker". (Tr. 18, *referring to* 637). It is clear the ALJ properly considered the supportability and consistency factors in assessing Dr. Fkiaras' opinion. *See Maria S. v. Kijakazi*, No. 3:21-CV-0177 (DEP), 2022 WL 4619861, at *5 (N.D.N.Y. Sept. 30, 2022) (Rejecting plaintiff's argument that ALJ failed to address the supportability and consistency factors because the ALJ engaged in a detailed discussion of the evidence earlier in her decision, and the evidence discussed clearly supported the ALJ's finding.).

Similarly, the opinion of Dr. H. Miller, as affirmed by Dr. D. Brauer, was appropriately considered by the ALJ. Dr. Miller opined in part, that plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk, and sit about six hours each in an eight hour workday, and was limited to occasionally climbing ladders, ropes, scaffolds and stooping. (Tr. 125-26; *see also* Tr. 140-41 (Dr. Brauer's assessment of same)). The ALJ found "[t]his opinion is generally persuasive to the extent that it is consistent with the residual functional capacity, because to that extent, it is generally consistent with the record and supported by accompanying record review notes." (Tr. 20). The next sentences of the analysis included x-ray findings from Dr. Miller and reported activities of daily living. (Tr. 20-21).

As with Dr. Fkiaras, the ALJ had discussed the review notes in greater detail in the decision but also the history of treatment and exam findings which were not fully consistent with the opinion. (Tr. 18-19). Notably, despite alleging back pain for over two decades, plaintiff did not seek treatment until almost the end of the relevant period, when she did so, that treatment was successful in significantly reducing her symptoms within a few months. (*See* Tr. 627). Therefore, plaintiff's argument that Dr. Miller's opinion was stale is unavailing because she had not begun treatment in spite of complaints of back pain going back 25 years. (Tr 600).

As discussed above, Dr. Santarpia had opined only mild mental limitations after a consultative exam and her opinion was supported by prior administrative medical findings by Drs. May and Ng. (Tr. 121-22, 136-38, 598). The ALJ found that Dr. Santarpia's opinion was persuasive because it was supported by clinical observations and testing. (Tr. 20). Indeed, ALJ Neumann discussed Dr. Santarpia's examination findings, including adequate expressive and receptive language skills, euthymic mood, intact attention and concentration, and recent and remote memory skills. (Tr. 20). The ALJ additionally discussed the treatment notes where plaintiff

10

denied depression, anxiety or stress. (Tr. 20). The decision had sufficient analysis to permit meaningful judicial review of the ALJ's rationale in relation to the record evidence. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014*); Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

In sum, the ALJ based the RFC on the record as a whole, including the consultative examiner's opinion, the prior administrative findings, plaintiff's treatment records, and her activities of daily living. Remand is not warranted.

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**.

Dated: October 23, 2023  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge